Jones, J.
 

 For the purpose of this decision various dates involved in the transaction become important. On March 31,1923, the contract entered into between the parties was valid. It was neither
 
 malum in se
 
 nor
 
 malum prohibitum.
 
 However, before this contract had been executed, and while it still remained executory, and before the membership sales had been completed, the Legislature of this state passed a law prohibiting the sale of memberships for a fee or compensation. This law became effective on July 2, 1923, and at a time when these memberships still remained unsold. In the case of
 
 State ex rel. Crabbe
 
 v.
 
 Savings & Loan Co.,
 
 110 Ohio St., 320, 143 N. E., 894, this court decided that this law applied to this savings and loan association from the time such act became effective, and that the savings and loan company could not enter into a contract contemplating the future sale of its stock and memberships for which a fee or commission was to be paid.
 

 We have, therefore, a case where, although the contract was legal when made, its performance became illegal after the effective date of the so-called King Law. The record discloses that the parties to the agreement knew of the passage of
 

 
 *527
 
 the law three months prior to its effective date, discussed its effect upon the agreement, and considered the project of filing a friendly suit to test the question whether the law applied to an existing building and loan association which had entered into such contract prior to the effective date of the law.
 

 We have no hesitancy in Saying that while the contract was legal in its inception the performance of its covenants by either party, after the- effective date of the prohibitive law, became illegal, and neither party thereto could recover for its breach. Had the contract been so far executed that sales of memberships had been made thereunder prior to the effective date of the King Law, recovery, no doubt, would be permitted where the contract is divisible and the amount due can be apportioned. But the performance of this contract still remained executory at the time the law prohibiting the making of such contract became effective. It would be an anomaly in our jurisprudence for a court to hold that parties could enter into a contract despite a statute prohibiting it, and thereafter claim the fruits of its performance in a court of justice.
 

 The principle denying recovery in cases of this character has been sustained almost universally by text-book and judicial authority. It is necessary to refer to a few of them only:
 

 “Where the contract was originally legal, but because of a change * * * in the law, performance of the acts contracted for on one side or the other has become illegal, any subsequent performance of such acts is against public policy and the party who has undertaken to perform them
 
 *528
 
 is excused from so doing. If in spite of the legal prohibition he still performs, he cannot recover what was promised him in return therefor.” 3 Williston on Contracts, Section 1759.
 

 This is not a new doctrine, but one which has been pronounced from an early day. In
 
 Gray
 
 v.
 
 Sims,
 
 Fed. Cas. No. 5729, 3 Wash. C. C., 276, 280, Mr. Justice Washington, sitting on the circuit, said :
 

 “But if the contract be legal when it is made, and the performance of it is rendered illegal by a subsequent law, the parties are both of them discharged from its obligations. The insured loses his indemnity, and the insurer his premium.”
 

 Discussing the general principle applicable, Mr. Justice Harlan, in
 
 Louisville & N. R. Co.
 
 v.
 
 Mottley,
 
 219 U. S., 467, 31 S. Ct., 265, 55 L. Ed., 297, 84 L. R. A., (N. S.), 671, quotes the following from Pomeroy on Contracts:
 

 “This impossibility of enforcement exists, whether the agreement is illegal in its inception, or whether being valid when made, the illegality has been created by a subsequent statute.”
 

 Among the cases cited by the author in support of that view is an early English case
 
 (Atkinson
 
 v.
 
 Ritchie,
 
 10 East, 530, 534), in which the Chief Justice, Lord Ellenborough, delivering the opinion of the court, said:
 

 “That no contract can properly be carried into effect, which was originally made contrary to the provisions of law, or which, being made consistently with the rules of law at the time, has become illegal in virtue of some subsequent law, are propositions which admit of no doubt.”
 

 
 *529
 
 In
 
 American Mercantile Exchange
 
 v.
 
 Blunt,
 
 102 Me., 128, 66 A., 212, 10 L. R. A., (N. S.), 414, 120 Am. St. Rep., 463, 10 Ann. Cas., 1022, the principle under discussion was recognized in the following syllabus:
 

 “When any material part of an entire contract which was legal when made, becomes illegal by reason of a statute subsequently enacted, such contract is thereby wholly terminated as soon as the statute takes effect, although the time specified in the contract for its performance has not then fully expired.”
 

 Moreover, the same principle has been sustained by the following Ohio authorities:
 
 Hooker
 
 v.
 
 De Palos,
 
 28 Ohio St., 251, and
 
 Kahn, Jr.,
 
 v.
 
 Walton,
 
 46 Ohio St., 196, 20 N. E., 203.
 

 It is true that the parties to this contract may have made a mistake in law as to the application of the new act to an existing building and loan association which had entered into a contract prior to its effective date. However, both parties were fully acquainted with all the facts when the new law was passed by the Legislature on March 9, 1923; and although the law may have needed the construction of this court in order to determine its' applicability to existing contracts, and while the motive of the contracting parties may have been
 
 Iona fide,
 
 they cannot take advantage of their mistaken belief, for it was a mistake of law, purely, and ignorance of law would not excuse them.
 
 Valley Ry. Co.
 
 v.
 
 Lake Erie Iron Co.,
 
 46 Ohio St., 44, 50, 18 N. E., 486, 1 L. R. A., 412.
 

 It is our opinion, the contract being executory at the time of the effective date of the Bang Law
 
 *530
 
 prohibiting its performance, that all sales of memberships made after that date were illegal. Notwithstanding this, in view of this record, we are of the further opinion that the judgments of the courts below should be affirmed for the following reasons: This record fairly discloses that the legal feature now presented has been otherwise adjudicated in a former case between the parties to this litigation. Prior to the adjudication by this court of the case in
 
 quo warranto-,
 
 there had been a friendly suit in the common pleas court for the purpose of testing the liability of the parties to this contract on account of membership sales made by the finance company after the passage of the King Law. The suit in the instant case was brought by the finance company for the recovery of money due from the savings company, and in the short form. In defense the answer set forth the terms of the contract as indicated. It alleged that the finance company agreed to dispose of the memberships within 15 months after March 31, 1923; that said company on May 13, 1924, stopped selling the stock and memberships according to the terms of the contract, and had sold but 13,912 memberships of the entire issue. It does not allege that the stock and memberships actually sold under the contract were disposed of after July 3, 1923, when the prohibitive law became effective. For aught that appears in the answer the sales of the 13,912 memberships may have been made before the law took effect. The illegality of the transaction does not appear upon the face of the defendant’s answer. That feature was first developed by the testimony offered on the trial. The reply
 
 *531
 
 alleges that though the finance company was ready and willing to proceed with the contract the savings company was responsible for the breach, owing to its refusal to proceed therewith because of the decision made by the Supreme Court of this state on May 13, 1924.
 

 Had the answer set up the defense of illegality, the plaintiff would have been required to set up the former adjudication.
 
 Fanning
 
 v.
 
 Insurance Go.,
 
 37 Ohio St., 344. No former adjudication was formally pleaded, but, upon the trial, evidence having been offered showing the illegal character of the transaction, the former adjudication was offered and testified to without objection on the part of the savings company. The case then assumed the aspect of relevant and material testimony offered by the plaintiff, without any objection upon the part of the defendant, tending to show that the feature of illegality had been adjudicated in favor of plaintiff in a prior case. Had the defendant objected, the plaintiff might have amended its reply, pleading
 
 res adjudícala.
 
 Since no objection was made to the evidence of former adjudication, we think the evidence offered on that issue may be considered by the trial and reviewing courts under the principle announced in
 
 Hoffman
 
 v.
 
 Gordon & Bro.,
 
 15 Ohio St., 211, 218, and
 
 Bacon
 
 v.
 
 Daniels,
 
 37 Ohio St., 279.
 

 The testimony shows that one Zimmerman, president of the finance company, a witness for plaintiff, was asked the following questions touching the former adjudication:
 

 “Q. Now previous to this, had you any litiga
 
 *532
 
 tion with the Massillon Savings & Loan Company? A. Yes.
 

 “Q. And what was that? A. That was in reference to this same contract—this same court here.
 

 “Q. What, if anything, did the Massillon Savings
 
 &
 
 Loan Company do or neglect to do in that negotiation? (Here counsel for defendant objected because the record was the best evidence.)
 

 “Court: Can’t you agree about that?
 

 “Mr. Pontius (counsel for defendant): We will agree about the record.
 

 “Court: Can’t you agree what the court here held and what the Court of Appeals held? * * *
 

 “Court: I think you had better get that into
 

 the record.
 

 “Mr. Pontius (for defendant): I
 
 don’t know the
 
 number of those cases.
 

 “Mr. Myers (for plaintiff): I don’t think the number is material. If I am not correct, please stop me. For the purpose of the record it is conceded that the Imperial Finance Company filed an action in the common pleas court of Stark county, Ohio, for the collection of commissions which the Massillon Savings & Loan Company in light of the King bill refused to pay. In that case
 
 No.
 
 -, the court of common pleas held that the defendant company should pay the commissions due to the plaintiff company in this action, and the opinion of Judge Agler was affirmed by the Court of Appeals of this district in case No.-.
 

 “Mr. Pontius: That is correct.
 

 “Court: And decree and journal entry in those cases may be made a part of this record, may they?
 

 
 *533
 
 “Mr. Myers: As far as counsel for plaintiff is concerned.
 

 “Mr. Pontius: I don’t think it has any hearing on this case, but I have no objection to it.”
 

 Later a Mr. Kuhn, former director of the Massillon Savings
 
 &
 
 Loan Company, testified on behalf of the defendant. He testified that about the time of the effective date of the King Law, there was an understanding that a friendly action was to be brought against them by the finance company:
 

 “Q. And the friendly suit that you speak of was discussed in July, then, was.it? A. Yes; it was discussed a month before we ever had any plan of action laid.
 

 “Q. Mr. Kuhn, do you remember having a conversation with me just prior to the time of the filing of this action in court here? A; Yes; Mr. Zimmerman asked me to give you a copy of our proceeding, and we discussed our procedure—you were to file a petition and I was to demur to it and set up the King bill.”
 

 This testimony discloses that there was an arrangement made in good faith between the parties for a suit testing the liability of the parties to the contract as affected by the King Law and that an action was brought by the finance company for commissions due it under the contract. Later in the record there appears the journal entry of the court of common pleas in that cause, also offered without objection, disclosing that the demurrer to the finance company’s petition was overruled and that the defendant, not desiring to plead further, was found to be indebted to the plaintiff in the
 
 *534
 
 sum of $120, with interest from August 1, 1923. Judgment for that amount was rendered in favor of the plaintiff in the action. Although the plea of former adjudication had not been set up, the evidence sustaining it was permitted to go to the court without objection upon the part of the defendant; hence it is impossible to arrive at any other conclusion than that the question of the legality of this contract and the performance thereunder was submitted to the courts and adjudicated in favor of the finance company in the former case.
 

 Relying upon the adjudication the finance company continued the sale of memberships, under its contract, until the decision of this court on May 13, 1924.
 

 The judgment
 
 of the
 
 Court
 
 of
 
 Appeals will be affirmed.
 

 Judgment affirmed.
 

 Matthias, Allen and Kinkade, JJ., concur.