Zimmerman, J.
The evidence as to the existence of a partnership between the decedent and defendant is in sharp conflict. There are a number of indicia which would support the conclusion that no partnership was intended or created andthat the decedent was no more than an employee of defendant. Be that as it may, the Court of Appeals found upon some evidence that a partnership did exist, and since this court does not weigh evidence such finding will be accepted.
It appears from the bill of exceptions that during 1938 defendant was a resident of the city of Akron, and during the spring of that year entered into nego *55 tiations with, the Walsh brothers for the purchase of the Elk Cafe located in that city and which they owned and operated. Plaintiff’s decedent resided in the state of Illinois and came to Akron about April 1, 1938. Under date of March 31,1938, the Walsh brothers executed and delivered a bill of sale to defendant for all the physical equipment and chattels in the Elk Cafe, and he paid them the sum of $5,000 therefor. The Walsh brothers then held permits from the Ohio Department of Liquor Control for the sale of beer and intoxicating liquor in the Elk Cafe, viz., D-l, D-2, and D-3 permits. Walsh brothers made application for the transfer of these permits to defendant and he, upon approval of the transfers, became a permit holder.
Each year thereafter, permits were issued to defendant alone and the name of plaintiff’s decedent was not mentioned and did not appear in any of the transactions. The entire cafe business was ostensibly carried on in the name of defendant and,there is no clear indication in any of the written records produced at the trial that the decedent was a partner in the business.
Several provisions of the Liquor Control Act of Ohio are pertinent to this controversy.
By Section 6064-8 (2), General Code, the Department of Liquor Control has the power to grant or refuse permits for the sale of beer and intoxicating liquor.
By Section 6064-14, General Code, “no person shall directly or indirectly * * * sell * * * any beer or intoxicating liquor * * * unless such person * * * shall be the holder of a permit issued by the Department of Liquor Control.”
By Section 6064-17, General Code, no permits, of the classifications specified, “shall be issued to a firm or partnership unless all of the members of said firm •or partnership are citizens of the United States and a *56 majority thereof have resided in this state for one year prior to application therefor.”
By Section 6064-18, General Code, successful applicants for permits of the classifications herein involved shall give an approved bond.
By Section 6064-20, General Code, the permit issued “shall authorize the person therein named to carry on the business therein specified at the place * * * therein described,” and such permit shall not “authorize any person other than the.one therein named to carry on such business at the place * * * named therein. ’ ’
For obvious reasons, the state is vitally concerned with the character and reputation of every individual who sells alcoholic beverages and with the manner in which this activity is conducted. As has been noted, the statutes of Ohio set out definite and specific rules which must be strictly complied with for one lawfully to engage in the business of selling beer and intoxicating liquor, and the identity of all those desiring to engage in such business must be disclosed in the applications for permits. As a condition to the issuance of permits applicants must meet the qualifications prescribed by statute and by rules and regulations of the Department of Liquor Control. One of the principal purposes of the Liquor Control Act is to promote public policy by restricting and regulating a business potentially dangerous to the morals of the people.
As long ago as 1775, Lord Mansfield said in the case of Holman v. Johnson, 1 Cowper, 341, 343:
“The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the *57 real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this; ex dolo malo non oritur actio [out of fraud.no action arises]. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff’s own stating or otherwise, the cause of action appears to arise ex turpi causa [out of a base consideration], or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. ’ ’
A part of the above language was quoted with approval and applied in Kahn, Jr., v. Walton, 46 Ohio St., 195, 207, 20 N. E., 203, 209.
Upon the principle stated, the courts in most jurisdictions will not recognize a partnership agreement to carry on an illegal business or to conduct a legal business in an unlawful manner and will not enforce or compel an accounting or contribution between or among the partners in such an illegal enterprise. 40 American Jurisprudence, 358, Section-326.
In Massillon Savings & Loan Co. v. Imperial Finance Co., 114 Ohio St., 523, 151 N. E., 645, the third paragraph of the syllabus baldly states:
“A party who enters into a contract despite a statute prohibiting it, cannot thereafter claim the fruits of its performance in a court of justice.”
In the case of Tucker v. Binenstock, 310 Pa., 254, 259, 165 A., 247, 248, one partner attempted to secure an accounting from his copartner in connection with a project involving the illegal sale of intoxicating liquor. The court, in refusing to accord the relief, stated in the course of its opinion:
“There is no principle more clearly established than that the law will not enforce an illegal transaction, *58 nor will it be an instrument for distribution of moneys illegally gained. * * * It simply leaves the wrongdoers where it finds them. The rule is not designed for the protection of the more dishonest of the partners, although the latter may benefit from its application, but rests upon a broad principle of public policy; the government seeks to punish transgressions of the law, not to reward or aid them by countenancing any phase of the illegality. Therefore, in litigation where the government is not a party, where transactions are tainted with wrongdoing, as violations of statutes intended for the upbuilding of the moral structure of the body politic, no court will lend its aid where the cause of action is grounded on such immoral or illegal acts.”
A frequently cited case of similár import is Vandegrift v. Vandegrift, 226 Pa., 254, 75 A., 365, 18 Ann. Cas., 404, in which it was held that a surviving partner could not maintain a bill for an accounting against his deceased partner’s executrix, where the partnership was formed for the purpose of manufacturing and selling distilled liquor and where the business under the partnership agreement was conducted in the name of the deceased partner only and the licenses, state and federal, were issued in the decedent’s name alone. The court took the view that such partnership arrangement was illegal in the face of laws which required that an applicant for a distiller’s license shall state that he is the only person pecuniarily interested in the business,and that every distiller shall report to a designated authority the names of those interested in such business. It was held further that under circumstances like those disclosed equity will leave the parties where it finds them and will not lend its aid toward the recovery of money derived from the partnership business which one partner claims is due him from the other. See, also, Eisenman v. Seitz, 26 Del. Ch., 185, 25 A. (2d), 496, and Cerino v. Van Orden, *59 98 N. J. Eq., 7, 129 A., 704, affirmed 100 N. J. Eq., 339, 134 A., 916.
In the instant ease, the rights of plaintiff are no greater than or different from those of her decedent. The principal business of the Elk Cafe was the sale of beer and intoxicating liquor. Under the express provisions of the Liquor Control Act, representing the public policy of this state, no person shall directly or indirectly sell any beer or intoxicating liquor, unless such person shall be the holder of a permit, issued by the Department of Liquor Control, to do so, and any permit issued shall not authorize any person other than the one named therein to engage in such business. .....
Assuming the existence of a partnership between defendant and the decedent, the latter was engaged in the sale of beer and intoxicating liquor in direct opposition to and in defiance of the statutes of Ohio and was consequently unlawfully engaged in such undertaking.
Under the authorities cited, which correspond with the weight of authority and are in accord with the Ohio cases dealing with the general subject, the decedent’s status was such that he could not have successfully resorted to a court of equity for an accounting between himself and defendant, and his administratrix is in no better position.
Counsel for defendant urge several other reasons why the judgment of the Court of Appeals should be affirmed. However, the basis upon which this decision has been placed makes it unnecessary to note or discuss those matters.
The judgment of the Court of Appeals is, therefore, affirmed.

Judgment affirmed.

Weygandt, C. J., Stewart, Middleton, Taft, Matthias, and Hart, JJ., concur.