Taft, J.
In order to avoid the effect of this court’s decision in Westerhaus v. City of Cincinnati, 165 Ohio St., 327, 135 N. E. (2d), 318, plaintiffs have emphasized the fact that the machines involved in the instant cases are not equipped so as to provide for and are not to be used to provide free plays. However, besides deciding that free-play machines are gambling devices, we also decided in the Westerhaus case that, since the proposed use of the machines there involved would violate certain state statutes, a petition of the owner of the machines “seeking equitable relief to protect such machines and seeking *107 a declaratory judgment setting forth the rights and duties of such owner with respect to such machines, will be dismissed.” (Paragraph four of syllabus.) In the opinion at page 335, it was pointed out that “if # * * each of the * * * machines # * * is * * * a ‘gambling device or machine,’ then the” trial court “would have been encouraging violations of” the law “if it had given plaintiff any relief with regard to those machines, and its judgment in dismissing the petition must be affirmed.” If all the proposed uses by plaintiffs of the machines involved in the instant cases will necessarily violate the law, then their petitions, seeking equitable relief to protect those machines and seeking declaratory judgments setting forth their rights and duties with respect to such machines, should be dismissed. Even though the law violated may be set forth in municipal ordinances instead of in state statutes, the same principle must be applied.
As we view it therefore we are confronted at the outset with the question whether the proposed uses by plaintiffs of the machines involved in the instant cases will necessarily violate any valid provisions of the ordinances of Columbus.
We agree with the Court of Appeals that these ordinances appear to have “been hastily drawn and considered without that degree of care and clarity of expression which should attend legislative enactments.” However, although complaint is made with respect to the vagueness, indefiniteness and uncertainty of some parts of these three ordinances, no such complaint is made with regard to the provisions of section 29.69-1, hereinafter referred to as the 1954 ordinance, which makes it a misdemeanor to possess within the city or to control a “pin game * * * the operation, use or play of which is controlled by placing therein any coin.” The allegations of plaintiffs’ petitions either are or necessarily indicate that plaintiffs’ business is the ownership, exhibition and rental to others for exhibition and use in Columbus of just such pin games. It is apparent therefore that plaintiffs neither contemplate nor suggest any possession in Columbus by anyone of the machines involved in the instant eases that will not necessarily amount to what is specified as a misdemeanor by that ordinance. Hence, unless plaintiffs can establish the invalidity of that ordinance, their petitions must be dismissed.
*108 Plaintiffs argue that, since the pin-game machines in the instant cases are to be used for amusement only, their operation constitutes a legitimate business; and that such a business cannot be prohibited. Such an argument, in effect, begs the question. Obviously, to the extent that acts in carrying on a business do not violate valid prohibitions of statutes and ordinances, it is a legitimate and lawful business. To the extent that those acts do violate such prohibitions, the business is neither legitimate nor lawful. If the carrying on of that business involves the doing of acts which are prohibited by the 1954 ordinance, then it is necessary to determine whether that ordinance is valid. It is not helpful, in determining that question, to jump to the conclusion that there is a right to do such acts and that, therefore, the ordinance prohibiting the doing of them is invalid.
Plaintiffs argue in effect that, although Columbus may have power to make regulations with respect to pin-game machines, it has no power to prohibit them.
Columbus contends that its power to enact the 1954 ordinance is derived from the provisions of Section 3 of Article XVIII of the Constitution, and plaintiffs contend that any such poAver can only be derived therefrom. That section reads:
“Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
■The “poAvers of local self-government” conferred upon municipalities by this constitutional provision include the power to enact local legislation, except to the extent that limitations upon that legislative poAver have been set forth in the Constitution. Obviously, one such limitation is that any “police, sanitary and other similar regulations” that are adopted may be enforced only “within” the municipality’s limits and cannot “conflict with general laws.” However, the Avords appearing-in Section 3 of Article XVIII of the Constitution after the word “self-government” represent not a grant of legislative power but a limitation on the legislative power granted by the words up to and including the Avord “self-government.” Hence, if the state would have poAver to prohibit what the 1954 ordinance- pur *109 ports to prohibit within the limits of Columbus, then that ordinance cannot be considered invalid merely because it prohibits instead of regulates.
We recognize that the Court of Appeals for Montgomery County apparently based its decision in Frecker v. City of Dayton, 88 Ohio App., 52, 85 N. E. (2d), 419, upon the conclusion that the police power granted to municipalities by Section 3 of Article XVIII of the Constitution includes the power to regulate but not the power to prohibit. That conclusion was apparently based upon the premise that the police power of a municipality or its power to enact police regulations is derived from the portion of that constitutional provision appearing after the word “self-government.” As hereinbefore pointed out that premise is incorrect. It may be observed that, although this court affirmed the judgment of the Court of Appeals in the Frecker case (153 Ohio St., 14, 90 N. E. [2d], 851), the majority opinion, in giving reasons for the affirmance, apparently did not approve the conclusion, expressed by the Court of Appeals, that the police power granted to municipalities includes only the power to regulate and not the power to prohibit; and the minority opinion expressly rejected that particular conclusion of the Court of Appeals, thereby at least indicating that this court unanimously failed to approve any such conclusion when it was urged to approve it.
The case of Bronson v. Oberlin, 41 Ohio St., 476, 52 Am. Rep., 90, relied upon by plaintiffs, was decided long before adoption of Section 3 of Article XVIII of the Constitution and at a time when municipalities derived any legislative powers they might have from enactments of the General Assembly. Its distinction from the instant case is well demonstrated by the following language of the opinion by Nash, J., at page 482:
“Whether the Legislature could confer the power to prohibit * * * or whether the council by ordinance could prohibit what this power conferred, are questions not involved in this case. The question simply is, ‘What power did this act confer?’ We are of the opinion that it did not give authority to prohibit.”
The case of Weber v. Board of Health, 148 Ohio St., 389, 74 N. E. (2d), 331, relied upon by plaintiffs, actually tends to support the conclusion that legislative power may include the power *110 to prohibit a business not unlawful in itself. Thus it is said in paragraph three of the syllabus:
“* * * when such board [of health] passes a resolution which prohibits a business not unlawful in itself and which is susceptible to regulations * * # such board transcends its administrative rule-making power and exercises legislative functions * * V’
Plaintiffs argue that the 1954 ordinance is arbitrary and unreasonable and that it takes plaintiffs’ property without due process of law.
Almost every exercise of the police power will necessarily either interfere with the enjoyment of liberty or the acquisition, possession and production of property, within the meaning of Section 1 of Article I of the Ohio Constitution, or involve an injury to a person within the meaning of Section 16 of Article I of that Constitution, or deprive a person of property within the meaning of Section 1 of Article XIY of the Amendments to the Constitution of the United States. Nevertheless, it is well settled that an exercise of the police power having such an effect will be valid if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary. City of Piqua v. Zimmerlin, 35 Ohio St., 507, 511.
Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals or general welfare of the public and whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them. State, ex rel. Standard Oil Co., v. Combs, Dir., 129 Ohio St., 251, 194 N. E., 875; City of Dayton v. S. S. Kresge Co., 114 Ohio St., 624, 151 N. E., 775, 53 A. L. R., 916; and City of Cleveland v. Terrill, 149 Ohio St., 532, 80 N. E. (2d), 115.
Myers v. City of Cincinnati, 128 Ohio St., 235, 190 N. E., 569, involved an ordinance which made it unlawful “to exhibit * * * any machine * * * which may be operated by the use of any coin, token * * * or disc * * * if said machine # * when so operated * * * returns or distributes one or more coins, tokens *111 * * * or discs. ’ ’ A machine which always returns one or always returns any other specific number of tokens would be described by the words of this ordinance. Such a machine obviously does not involve any element of chance, an essential element of gambling. Also, except for a possible inference which might be drawm from the portion of the opinion first quoted hereinafter, there is nothing in the report of the ease to indicate that any element of chance was involved in playing this machine, i. e., a chance of getting or not getting tokens that would enable a replay.
In the opinion “by the court” it is said:
“Many recent decisions are to the effect that slot vending-machines of the general type involved in this case, which in return for coins deposited therein dispense merchandise, accompanied at intervals by a varying number of checks or tokens which may be used either for obtaining additional merchandise or for securing additional amusement by continuing the operation of the machine, are gambling devices.”
The report affirmatively indicates that the tokens received from this machine had no cash or trade value and that one who put a nickel in the machine always got a package of mints but that nothing but tokens came from the machine when replayed only with a token. Although tokens could be used “for securing additional amusement by continuing- the operation of the machine,” it does not appear whether the machine dispensed “at intervals * * * a varying- number of tokens ’ ’ or whether it simply dispensed on each occasion the same number of tokens. If the machine simply dispensed on each occasion the same number of tokens, then it would obviously not involve the element of chance, an essential element of gambling. See Westerhaus v. City of Cincinnati, supra (165 Ohio St., 327). That this may have been the fact is indicated by the remainder of the opinion reading, so far as pertinent:
“* * * our sole function is to decide whether the ordinance before us constitutes a valid exercise of police power on the part of the municipal authorities * * *.
“The constitutional provisions relied upon by plaintiff in error protect the citizen in his right to pursue any lawful business, but they do not prohibit legislation intended to control *112 pursuits which because of their nature have injurious and harmful possibilities. Even if the slot machine involved in this case is manufactured and intended for lawful operation, its potentiality and design is such that it may be easily put to unlawful use. [As by wagering on which or what combination of designs would appear on the stopping of each of the three wheels rotated in the playing of the machine.] The regulation or prohibition of such a mechanism need not be postponed until such event occurs * * *.
<< * * *
“The city has the right to determine whether the exhibition, maintenance and operation of slot machines as defined in the ordinance are prejudicial to the public good * * *.
“Being of the opinion that the ordinance in question constitutes a valid exercise of police power and that the defendant was properly convicted under it, the judgment * * * is affirmed.”
It is apparent that this court assumed in that case that the slot machine there involved was “manufactured and intended for lawful operation.” However, this court unanimously held! that a municipality might prohibit its exhibition because “itsI potentiality and design” were “such that it may be easily put to I unlawful use”; and this court unanimously and specifically! stated that “the * * * prohibition of such a mechanism need not! be postponed until such event occurs.” See also Zelles v. Matowits, 139 Ohio St., 627, 41 N. E. (2d), 708 (trial court report in 22 Ohio Opinions, 261).
Such a conclusion is in full accord with decisions outside this state. Calcutt v. McGeachy, Sheriff (1937), 213 N. C., 1, 195 S. E., 49; Stanley v. State (1937), 194 Ark., 483, 107 S. W. (2d), 532; Woodward v. City of Lithonia (1940), 191 Ga., 234, 11 S. E. (2d), 476; Alexander v. Hunnicutt, Sheriff (1941), 196 S. C., 364, 13 S. E. (2d), 630; State, ex rel. Green, v. One 5c Fifth Inning Baseball Machine (1941), 241 Ala., 445, 3 So. (2d), 27. See Eccles v. Stone, Sheriff (1938), 134 Fla., 113, 183 So., 628: Murphy v. People, 225 U. S., 623, 56 L. Ed., 1229, 32 S. Ct., 697 41 L. R. A. (N. S.), 153; Ohio, ex rel. Clarke, v. Deckebach, Aud 274 U. S., 392, 71 L. Ed., 1115, 47 S. Ct., 630; 52 American Juris prudence, 280, Section 34; 24 American Jurisprudence, 421, Section 34. Annotation, 148 A. L. R., 879, 895. But see also annotations, 132 A. L. R., 1004, 162 A. L. R., 1188.
*113 If the reasoning of the court given in Stanley v. State, supra, as a basis for its decision were followed, we would be required to say in the instant cases that the machines described in the 1954 ordinance are “gambling devices per se because the only reasonable and profitable use to which they may be put is use in a game of chance. ’ ’ This is because a reading of the report of that case will readily lead to the conclusion that the machine there involved was much more of an amusement device than the machines described in the 1954 Columbus ordinance.
Although the allegations of plaintiffs’ petitions disclose that their machines all register scores, it is conceivable that a pin game might be so designed as to register no score. However, it would not be a game within the ordinary meaning of the word “game,” and hence would not be described by the words of the 1954 ordinance, if it did not enable someone to determine whether he had, by his efforts in playing it, either achieved or not achieved some objective. Hence, the pin game described in this ordinance will require payment of a price (“play * # # controlled by placing therein * * * coin”) for the chance of achieving a score or some other objective. Even though no provision is made for the third essential element of gambling, i. e., a prize on achieving such score or other objective, it is apparent that the machine does furnish a ready means for two or more persons to gamble, by providing for such a prize on the achievement of some score or other objective of the game, and hence the game is readily adaptable to use for gambling purposes.
In determining whether the 1954 ordinance is reasonable and whether it has a substantial relationship to the health, morals, safety or general welfare of the people of Columbus, we must weigh the benefits to those people from the elimination of such devices against the benefits in having such devices available for use by those people and the interests of the plaintiffs as the owners of those devices. Cf. Curtiss v. City of Cleveland, 166 Ohio St., 509.
In doing so, we note at the outset that the ordinance does not purport to and could not make possession of the machines unlawful outside Columbus. Thus, plaintiffs can only be prevented from having them in Columbus. This may involve plaintiffs in some expense in moving the machines from Columbus *114 and may prevent them from making money from their nse in Columbus, but, if plaintiffs comply with the ordinance, they do not lose their machines and will have opportunities to make money from their use elsewhere.
It is true that these machines may be operated by members of the public without any gambling, but there will obviously be very little if any benefit from such operation to anyone, other than to the owner or exhibitor by reason of payments received for their use. Certainly, a ’ legislative body could reasonably conclude that the amusement provided to operators of such machines, which is all they would get from their operation unless they were used as gambling devices, would contribute little if anything at all to the health, safety, morals or welfare of such operators or of the people of Columbus.
On the other hand, the potentialities for injury and harm to the health, morals, safety and welfare of the public from these machines may quite reasonably have been, as the preamble to the 1954 ordinance indicates they were, regarded as very serious by the legislative body of Columbus.
In support of their contention that there are no such potentialities for such injury or harm, plaintiffs offered considerable evidence in an effort to establish that the games described by the 1954 ordinance do not tend to encourage gambling or loitering. With respect to a somewhat similar problem it was said in the opinion by Mr. Justice Lamar in Murphy v. People, supra (225 U. S., 623):
“That the keeping of a billiard hall has a harmful tendency is a fact requiring no proof, and incapable of being controverted by the testimony of the plaintiff that his business was lawfully conducted, free from gaming or anything that could affect the morality of the community or of his patrons. The fact that there had been no disorder or open violation of the law does not prevent the municipal authorities from taking legislative notice of the idleness or other evils which result from the maintenance of a resort where it is the business of one to stimulate others to play beyond what is proper for legitimate recreation.”
Where it has clearly appeared that legislation enacted pursuant to the police power is unreasonable or arbitrary or has nc real or substantial relation to the public health, safety, morals *115 or general welfare, this court has not hesitated to hold it invalid. See Olds v. Klotz, 131 Ohio St., 447, 3 N. E. (2d), 371 (holding invalid ordinance limiting and fixing hours per day during which grocery might be kept open); City of Cincinnati v. Correll, 141 Ohio St., 535, 49 N. E. (2d), 412 (holding invalid ordinance limiting and fixing hours during which barber shop may remain open); Grieb v. Department of Liquor Control, 153 Ohio St., 77, 90 N. E. (2d), 691 (holding invalid statutes providing for confiscation of alcoholic liquors lawfully acquired and owned by but found on premises of one whose permit to sell had been revoked or cancelled). However, as to the 1954 ordinance involved in the instant case, it does not so appear.
In contending that the 1954 ordinance is arbitrary and unreasonable, plaintiffs further point out that its words would preclude the possession of a pin-game machine in a private home, solely for the amusement of the owner, his family and friends; and it is contended that a municipal legislative body has no authority to enact any such prohibitory legislation.
As the preamble to the 1954 ordinance indicates, possession of the pin games described therein was made unlawful because the legislative body had, among other things, determined that their “operation * * * encourages gaming and the general disorder incidental thereto * * * and * * * encourages a false sense of values, idling and loitering.” It is obvious that the operation of a machine in a private home would encourage the same things. Thus, Section 2915.06, Bevised Code, makes it a crime for any “person” to “play a game for money or other thing of value or make a wager” therefor; and a pin game such as described in the 1954 ordinance could obviously be very readily used in a private home as a means of violating that statute.
Also, if the owner of a private home really wants to keep such a machine in his home solely for the amusement of himself, his family and friends, he can do so without violating the 1954 ordinance by acquiring such a machine so modified that its operation is not, to use the words of the ordinance, “controlled by placing therein any coin, plate, disk, plug, key or other token, or by the payment of a fee.” It could hardly be contended with reason that the amusement to the operator, which plaintiffs claim is harmless, is such “placing therein” or “payment.”
*116 If the 1954 ordinance made an exception for possession of these machines in private homes, such exception would obviously furnish a means of covering up illegal possessions of such machines. Also such machines could then rapidly be moved to and from such homes in order to keep them away from the activity of law-enforcement officers.
In our opinion, the breadth of this prohibition of possession of these machines, as specified in the 1954 ordinance, has a reasonable basis and could reasonably have been determined by the Columbus legislative body to have a real and substantial relationship to the health, morals, safety and welfare of the people of Columbus.
It may further be observed with respect to this contention that, in making it, plaintiffs are seeking a decision that the 1954 ordinance is invalid, not because it impairs any constitutional rights of plaintiffs but because it impairs the constitutional rights of others. It has sometimes been said that “one attacking the constitutionality of a statute is not the champion of any rights except his own.” 11 American Jurisprudence, 752, Section 111.
Plaintiffs contend, in effect, that, since they have many outstanding contracts with others for the operation of these pin games in Columbus, an ordinance making it a misdemeanor to possess or control such games within Columbus will be invalid because it will impair the obligation of those contracts within the meaning of constitutional provisons.
It is well settled that the provisions of the state and federal Constitutions, inhibiting laws impairing the obligation of contract, cannot affect the police power. In other words, the exercise of the police power cannot be headed off by the making of contracts reaching into the future. State, ex rel. Crabbe, Atty. Genl., v. Massillon Savings (& Loan Co., 110 Ohio St., 320, 143 N. E., 894; City of Ahron v. Public Utilities Commission, 149 Ohio St., 347, 78 N. E. (2d), 890. Thus, if the police power of a municipality includes the power to make possession within the municipality of a certain kind of property unlawful, the exercise of that police power to make such possession unlawful will not be impaired by the fact that owners of such property have theretofore made' otherwise binding contracts relative to its use within the municipality.
*117 Plaintiffs contend in effect that, if possession of the games described in the 1954 ordinance is to be made unlawful because of the possibility that they might be used for gambling, then all games having a similar possibility should likewise be treated as unlawful; and that otherwise there will be a clear denial of the equal protection of the law within the meaning of constitutional provisions.
It is true that people do gamble with checkers and cards and gamble on the outcome of games such as golf, tennis, football and baseball. However, it would seem that there is a real and substantial distinction between pin games of the kind described in the 1954 ordinance and those other games, which would justify the classification of such pin games separately from those other games.
We believe that this contention of plaintiffs is disposed of by the following statements from the syllabus in City of Xenia v. Schmidt, 101 Ohio St., 437, 130 N. E., 24:
“5. A classification must not be arbitrary, artificial, or evasive, but there must be a real and substantial distinction in the nature of the class or classes upon which the law operates.
“6. In respect to such distinctions, the legislative body has a wide discretion, and the legislation involving classification will not therefore be held invalid unless the classification attempted is clearly and obviously unreasonable to the point of discriminating against members of the same class, so as to deny them the equal protection of the laws.
i l # * *
“8. The guarantee of ‘equal protection of the laws’ under our Constitutions is fully complied with when the law operates equally upon each member of a constitutional class.
“9. A legislative body may direct its legislation against any evil as it actually exists, without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are not forbidden. (Yee Bow v. City of Cleveland et al., 99 Ohio St., 269, approved and followed.)”
Plaintiffs contend that the 1954 ordinance forbids what the statutes permit and therefore represents a regulation which is “in conflict with general laws” within the meaning of Section 3 of Article XVIII of the Constitution.
*118 In support of this contention, it is pointed out that there is no statute or constitutional provision which forbids the operation of an amusement device of the kind described in the 1954 ordinance. Apparently, to the extent that they fail to prohibit the possession or control of machines such as described in the 1954 ordinance, the statutes of Ohio may be said to permit such possession or control. However, there is no statute or constitutional provision which authorizes the possession or control of such machines.
In disposing of a similar contention with respect to a Columbus ordinance which made it a crime to have “possession * * # custody, or * * * control” of “any ticket, check * * * slip * * * or document * * * used * * * as evidence * * * in * # * recording * * * an interest in a lottery, ’ ’ it was said in the opinion by Middleton, J., in City of Columbus v. Barr, 160 Ohio St., 209, 212, 115 N. E. (2d), 391:
“The ordinance merely goes further than the statute in prescribing a penalty for engaging in gambling transactions not covered by the statute. The ordinance is not inconsistent with the statute.”
See also Village of Struthers v. Sokol, 108 Ohio St., 263, 140 N. E., 519, and Dallmann v. Kluchesky, 229 Wis., 169, 282 N. W., 9.
Arguments have been made with respect to the validity and interpretation of other provisions of the three Columbus ordinances involved in the instant cases. However, in view of our conclusion that the allegations of plaintiffs’ petitions and the provisions of the 1954 ordinance require dismissal of plaintiffs’ petitions, anything that we might say with respect to other provisions of those three ordinances or their validity would represent the consideration of something not necessary to sustain the judgments being rendered and hence might be considered as dicta.

Judgments affirmed.

Weygandt, C. J., Zimmerman, Bell and Matthias, JJ., concur.
Stewart, J., concurs in the judgment.
Herbert, J., dissents.